```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

OFFSHORE MARINE CONTRACTORS,    *         CIVIL ACTION
INC.
VERSUS                          *         NO: 04-1088

LABORDE MARINE CREWBOATS,       *         SECTION: "D"(4)
LLC
```

### ORDER AND REASONS

On Monday, January 30, 2006, the court held an **EVIDENTIARY HEARING** on the limited issue of "whether or not Offshore Marine Contractors, Inc. (OMC) and Horizon Offshore Contractors, Inc. (Horizon) agreed to a pre-suit settlement of OMC's claim for outstanding monies Horizon owed OMC relative to the charter of OMC's L/B KAITLYN EYMARD." Having considered the exhibits submitted during the hearing, the testimony of the witnesses, and the parties' post-trial memoranda, the court now rules.

### Background

Horizon contracted with Algonquin Gas Company (a subsidiary of Duke Energy) to perform work on the Hubline Pipeline Project which involved the construction of a natural gas pipeline in the Boston, Massachusetts harbor. To complete this project, Horizon needed the services of a lift barge and made a brokerage arrangement with LaBorde Marine Crewboats, LLC, who brokered the L/B KAITLYN EYMARD

from OMC.  Pursuant to a Blanket Time Charter Agreement [1] and a Short Form Charter Agreement[2] between OMC and Horizon, the L/B KAITLYN EYMARD performed certain obligations and OMC billed Horizon either directly or through LaBorde. (*See* Invoices billed to Horizon, Evidentiary Hearing Exhibits 4 & 5).

On **April 16, 2004**, OMC filed this lawsuit against Horizon (and others), claiming that Horizon has failed to pay all outstanding invoices.  In its Answer, Horizon pled the affirmative defense of accord and satisfaction, payment, and/or compromise, specifically contending that "Horizon remitted payment in the amount of $277,244.00 to [OMC] in full and complete satisfaction of any and all claims which are the basis of [OMC's] present lawsuit." (*See* Doc. No. 13, Horizon's "Answer & Counter Claim," Sixth Defense).

### 1.  Horizon's Position at the Evidentiary Hearing

At the Evidentiary Hearing, Horizon called its Chief Operating Officer, George Reuter, to testify in support of its affirmative defense.  Relying in part on contemporaneous notes made in his Franklin Daily Planner, Mr. Reuter explained that in a telephone conversation on **April 2, 2004**, he negotiated with Mr. Mike Eymard, Vice-President of OMC,[3] a global settlement of any and all

---

[1] *See* Blanket Time Charter Agreement, Evidentiary Hearing Exhibit 1.

[2] *See* Short Form Charter Agreement, Evidentiary Hearing Exhibit 2.

[3] OMC is run by Mike Eymard and his two sons, Louis "Tobie" Eymard and Raimy Eymard.  As Vice-President of OMC, Mike Eymard manages finances and legal aspects including settlements, but is not involved in the day to day operations; Tobie Eymard is the President of OMC and is charge of operations;

2

outstanding invoices allegedly due and owing to OMC by Horizon.

Mr. Reuter admitted that during negotiations, Mike Eymard initially indicated that he wanted a sum greater than $340,000. But according to Mr. Reuter, he explained to Mr. Eymard that Duke Energy was objecting to $150,000, representing ten days of charter hire, and Mr. Eymard agreed to deduct from the outstanding receivables of $340,291 approximately $17,800 of interest owed. This purportedly resulted in a settlement figure of approximately $322,491 (= $340,291-17,800).

Mr. Reuter further testified that on **April 16, 2004**, he had another telephone conversation with Mr. Mike Eymard, in which Mr. Eymard agreed to *further* reduce the outstanding receivables by $45,000, which represented three days of charter hire, resulting in the purported settlement figure of $277,244.[4]  Horizon takes the position that this $277,244 figure represented a final global settlement of all outstanding invoices between the parties, subject to Horizon's payment of said amount and OMC's signing of a lien release waiver (which was required by Duke Energy).

Horizon argues that this global settlement was memorialized in an e-mail sent by Mr. Reuter to Louis "Tobie" Eymard, Mike Eymard's

---

and Raimy Eymard is the Secretary/Treasurer of OMC and handles accounting and invoices.

[4]     Relying on the April 2, 2004 entry in his daily planner, Mr. Reuter testified that Horizon's outstanding invoices totaled $340,291.  The court notes that $340,291 - 17,800(interest) - 45,000(3 days of charter rate) = $277,491, which is slightly higher than the purported settlement figure of $277,244.

son and President of OMC, on **April 20, 2004**. In this e-mail, Mr. Reuter wrote:

> Please forward to Mike Eymard as I don't (sic) have his address:
>
> Mike ..... This E:Mail is to confirm our telecon on Friday April 16, 2004 where we agree to settle all outstanding invoices from OMC to Horizon on the subject Project for AGT. Such settlement amount is agreed to be U.S. $277,244. We are endeavoring to make this payment by the end of the week. In this regard we are currently negotiating a settlement with AGT in order to get them to release agreed settlement monies to Horizon.
>
> In the course of finalising (sic) our settlement agreement with AGT, they have asked we obtain releases from our subcontractors generally in the form attached. We are proposing that the end of this form be modified to show the outstanding amount agreed between ourselves (ie $277,244) instead of the total receivable for the project.
>
> Please confirm your concurrence to sign the attached as described.

(*See* Reuter's April 20, 2004 E-Mail, Evidentiary Hearing Exhibit 8).

On April 26, 2004, Tobie Eymard sent Mr. Reuter the following e-mail:

> Mr. Reuter,
>
> I was trying to find out when our monies would be sent out. Please let me Know (sic) ASAP.

(*See* Tobie Eymard's April 26, 2004 E-Mail, Evidentiary Hearing Exhibit 9).

On April 26, 2004, Horizon wired OMC funds in the amount of

$277,244. (*See* April 26, 2004 Wire Transfer, Evidentiary Hearing Exhibit 5, pp. 3-4 of 122). On this wire transfer, there is no reference to any type of "settlement." (*Id.*). Rather, four invoices are referenced, each with a different amount, and the four amount total $277.244. (*Id*). Further, Horizon wired this money without receiving a lien release waiver signed by OMC.

### 2. OMC's Position at the Evidentiary Hearing

At the Evidentiary Hearing, Mr. Raimy Eymard (Secretary/Treasurer of OMC) testified that as of April 1, 2004, Horizon owed OMC $489,050 under the charter agreement.[5] Further, Raimy Eymard explained that Horizon had a history of making partial payments to OMC; partial payments were often made by a single wire; and OMC thus allocated part of every payment to multiple invoices.

Mr. Mike Eymard testified that he became involved in trying to get Horizon to pay its outstanding invoices in February 2004, placing numerous phone calls to John Abadie and Mike Ballard of Horizon. According to Mike Eymard, these phone calls were not

---

[5] This figure of $489,050 includes a shipyard bill (dated March 24, 2004) from Conrad Shipyards in the approximate amount of $166,600. (*See* Conrad Shipyard Bill included in OMC Invoice, Evidentiary Hearing Exhibit 4, p. 5 of 19). In his testimony at the evidentiary hearing, Raimy Eymard testified that he sent this shipyard invoice to Horizon on or about March 24, 2004, but that the invoice was returned with the notation "do not pay" attached.

In his testimony at the evidentiary hearing, Mr. Reuter (Horizon's COO) admitted that the shipyard bill was not discussed in settlement negotiations, but Horizon maintains that the shipyard's invoice was part of the "global settlement" which included all outstanding invoices. In the event the court finds there was no settlement, Horizon disputes that this invoice was properly submitted under the terms of the Charter Party and Charter order, and reserves its rights to dispute this invoice at Trial. (*See* Horizon's Post-Trial Memo. at p. 2, n. 1).

returned and he finally spoke to Horizon's in-house counsel for assistance. Mike Eymard testified that he spoke to George Reuter of Horizon for the first time on **April 2, 2004**, when Mr. Reuter called Mike Eymard on his cell phone while Mike Eymard was in his lawyer's office on another matter.

Mike Eymard further testified that in this April 2, 2004 telephone conversation, Mr. Reuter asked him to agree to a discount of what Horizon owed. At the time Mike Eymard did not know the exact amount of what Horizon owed, but he told Mr Reuter that he wanted *full* payment of all monies owed and was not interested in discussing any discount.[6] Indeed, according to Mike Eymard, after the April 2, 2004 telephone conversation, he instructed his lawyer to file this lawsuit (which again was filed on **April 16, 2004**) to collect the full amount owed, and thus he had no other conversation with Mr. Reuter and he instructed his sons (Tobie Eymard and Raimy Eymard) not to discuss the matter with anyone from Horizon.

Tobie Eymard (President of OMC) also testified at the Evidentiary Hearing. He admitted receiving Mr. Reuter's e-mail of April 20, 2004, but he was clueless at to what had actually transpired between Mr. Reuter and his father (Mike Eymard) who was unequivocally handling any settlement negotiations between Horizon and OMC. Tobie also claims that there were no attachments (i.e.,

---

[6] Both of Mike Eymard's sons, Tobie and Raimy, were present when Mike Eymard received the phone call from George Reuter. Both confirmed that they heard their father tell George Reuter that he would not agree to settle for a discount off the invoices.

the purported lien release waiver) to Mr. Reuter's e-mail. The court finds it perplexing that Mr. Reuter sent his e-mail to Tobie Eymard, rather than directly send Mike Eymard some type of written confirmation whether by e-mail, fax or mail, because it was Mike Eymard (not Tobie Eymard) who had authority to negotiate and/or confirm any settlement agreement.

Tobie Eymard admitted to responding to Mr. Reuter's April 20, 2004 e-mail, but explained that he was only concerned about getting money to pay his employees. Both Tobie Eymard and Raimy Eymard (again, OMC's Secretary/Treasurer) also admitted receiving Horizon's April 26, 2004 wire transfer of $277,244. However, all of the Eymards denied that the $277,244 were settlement proceeds. Rather, they insisted that Horizon's wire transfer of $277,244 was simply a partial payment of its account (in keeping with its history of making partial payments on the account).

### 3.  The April 26, 2004 Wire Transfer of $277,244

The April 26, 2004 wire transfer of $277,244 was prepared by Horizon. The court finds that the absence of any reference to settlement and the absence of any type of restriction on this wire transfer is significant and supports OMC's position that a settlement had not been reached. ( See 4/26/04 Wire Transfer, Evidentiary Hearing Exhibit 5, pp. 3-4 of 122).

Further, John Abadie (Horizon's Vice President of North American Operations) testified at the Evidentiary Hearing, and he

7

explained that it was Horizon's general practice to tender settlement funds after receipt of executed settlement documents. However, this procedure was not followed when Horizon made the $277,244 wire transfer. OMC executed neither any type any type of settlement document nor lien waiver release referenced in Mr. Reuter's April 20, 2004 e-mail.

Thus, the court finds that the April 26, 2004 wire transfer of $277,244 was for payment of overdue invoices and *not* a payment of global settlement funds. For OMC to accept the $277,244 payment as a global settlement, OMC would have to write off the Conrad shipping bill in the approximate amount of $166,600 and also accept an approximate $45,000 reduction of the day rate. However, based on the testimony from the Eymards (in particular, Mike Eymard) at the Evidentiary Hearing, the Eymards never agreed to such a settlement and wanted payment in full of any and all outstanding invoices they believed were relative to the charter of the L/B KAITLYN EYMARD.

Further, it is clear from the testimony and evidence presented at the evidentiary hearing that Laborde was never involved in any settlement conversations between Horizon and OMC. Mike Eymard testified that he never talked to LaBorde about settlement, and never would have settled with Mr. Reuter without getting LaBorde involved.

**CONCLUSION**

Based on the foregoing, the court concludes that Horizon has failed to meet its burden of proof on its affirmative defense of accord and satisfaction, payment, and/or compromise. While general maritime law recognizes the validity of oral agreements to settle, this case simply does not meet the requisites for the type of global settlement Horizon contends was agreed upon by OMC. Accordingly;

**IT IS ORDERED** that Horizon's affirmative defense of accord and satisfaction, payment, and/or compromise be and is hereby **STRICKEN**.

However, nothing herein should be construed as the court's determination of what amount of money Horizon actually still owes OMC relative to the charter of OMC's L/B KAITLYN EYMARD. That amount[7] will be determined following Trial, which will be scheduled (along with a date for the Pre-Trial Conference and attendant cut-off dates) in a **Telephone Conference** which will be conducted by the Courtroom Deputy with counsel of record on **Tuesday, March 7, 2006 at 10:30 a.m.**

---

[7] In determining the total amount of money that Horizon still owes OMC relative to the charter of the L/B KAITLYN EYMARD, the court will necessarily have to determine just what charges (including but not necessarily limited to day rate charges, shipyard bills, demobilization and restoration costs) are recoverable.

New Orleans, Louisiana, this <u>9th</u> day of <u>February</u>, 2006.

```
                         _____
                              A.J. McNAMARA
                         UNITED STATES DISTRICT JUDGE
```